GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy (#134180)
Peter A. Binkow (#173848)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
Email: info@glancylaw.com

*Liaison Counsel for Lead Plaintiff District No. 9,*
*International Association of Machinists & Aerospace*
*Workers Pension Trust and the Class*

BERNSTEIN LIEBHARD LLP
Jeffrey M. Haber admitted pro hac vice
Joseph R. Seidman, Jr. admitted pro hac vice
10 East 40th Street New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218

*Lead Counsel for Lead Plaintiff District No. 9,*
*International Association of Machinists & Aerospace*
*Workers Pension Trust and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **IN RE LJ, INTERNATIONAL, INC. SECURITIES LITIGATION** | **CV-07-6076-GAF (JWJx)** <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing: September 14, 2009 at 9:30 a.m.** |

Case No. C-00-3645 JCS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I. PRELIMINARY STATEMENT ........................................................... 1

II. FACTUAL BACKGROUND ................................................................ 3

III. PROCEDURAL HISTORY OF THE LITIGATION ........................... 3

IV. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
ACTION SETTLEMENTS ................................................................... 3

V. THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD
FOR APPROVAL ................................................................................ 6

    A. The Settlement Appropriately Balances the Risks of Litigation and
the Benefits to the Class of Certain Recovery ............................. 6

    B. Continued Litigation Poses Substantial Risk in Establishing
Liability and Damages .................................................................. 7

    C. Balancing the Certainty of an Immediate Recovery Against the
Expense and Likely Duration of Trial Favors Settlement .......... 11

    D. The Parties Could Sufficiently Identify The Strengths and
Weaknesses of Their Cases ......................................................... 13

    E. The Settlement Is the Product of Arm's-Length Negotiations ...... 14

    F. The Recommendations of Experienced Counsel Favors Approval
of the Settlement .......................................................................... 15

    G. The Reaction of the Class Supports Approval of the Settlement ... 15

VI. THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED ...... 18

VII. FINAL CERTIFICATION OF THE PROPOSED CLASS FOR
PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE ...... 19

    A. The Class is Sufficiently Numerous ............................................ 20

    B. Common Questions of Law or Fact Exist .................................... 20

    C. Lead Plaintiff's Claims are Typical of Those of the Class .......... 21

    D. Lead Plaintiff is an Adequate Class Representative .................... 22

E.   The Proposed Class Satisfies Rule 23(b)(3)..............................................23

    1.   Common Questions of Law and Fact Predominate  over
    Individual Questions ......................................................................23

    2.   A Class Action is Superior to other Available Methods for
    Resolving this Controversy............................................................23

VIII.  CONCLUSION..............................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) .............................................................19, 20, 23

*In re Am. Bank Note Holographics, Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................18

*In re Apple Computer Sec. Litig.,* NO. C-84-20148(A)-JW, 1991 WL
    238298 (N.D. Cal. Sep 06, 1991) ...........................................10

*In re AT&T Corp. Sec. Litig.,*
    455 F.3d 160 (3d Cir. 2006) ......................................................9

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,*
    899 F.2d 21 (11th Cir. 1990)......................................................9

*Binder v. Gillespie,*
    184 F.3d 1059 (9th Cir. 1999)....................................................7

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975)....................................................12

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979)............................5, 6, 12, 13

*Bullock v. Adm'r of Kircher's Estate,*
    84 F.R.D. 1 (D.N.J. 1979) .......................................................12

*In re Convergent Technologies Sec. Litig.,*
    948 F.2d 507 (9th Cir. 1991)....................................................10

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ...........................................................16,

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ....................................4, 5, 13, 15

*Epstein v. MCA, Inc.,*
 50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds sub nom.*
 *Matsushita Elec. Indus. Co. v Epstein*, 516 U.S. 367 (1996)...................23

*Ernst & Ernst v. Hochfelder,*
 425 U.S. 185 (1976) .........................................................................7

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
 630 F. Supp. 482 (E.D. Pa. 1985).................................................15

*Freedman v. Louisiana-Pacific Corp.,*
 922 F. Supp. 377 (D. Or. 1996).....................................................21

*Girsh v. Jepson,*
 521 F.2d 153 (3d Cir. 1975) ....................................................11, 13

*In re Global Crossing Sec. & ERISA Litig.,*
 225 F.R.D. 436 (S.D.N.Y. 2004)...................................................19

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir. 1998).........................................4, 5, 6, 15

*In re Ikon Office Solutions, Inc.,*
 194 F.R.D. 166 (E.D. Pa. 2000) ......................................................6

*Korn v. Franchard Corp.,*
 456 F.2d 1206 (2d Cir. 1972) ........................................................19

*In re Lease Oil Antitrust Litig.,*
 186 F.R.D. 403 (S.D. Tex. 1999) .............................................19, 20

*Lewis v. Newman,*
 59 F.R.D. 525 (S.D.N.Y. 1973)......................................................6

*Linney v. Cellular Alaska P'ship, Nos.*
 C 96 3008 DLJ, C 97 0203 DLJ, C 97 0425 DLJ, C 97 0457 DLJ,
 1997 WL 450064 (N.D. Cal. July 18, 1997) ...................................4

*Marshall v. Holiday Magic, Inc.,*
 550 F.2d 1173 (9th Cir. 1977)........................................................4

*M. Berenson Co., Inc.*,
    671 F. Supp. 819 (D. Mass. 1991)............................................................5

*In re MDC Holdings Sec. Litig.*,
    754 F. Supp. 785 (S.D. Cal. 1990) .........................................................21

*McGonigle v. Combs*,
    968 F.2d 810 (9th Cir. 1992)..................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)...............................................13, 15, 17, 18

*In re Mfr. Life Ins. Co. Premium Litig.*,
    MDL No. 1109, Master File No. 96-CV-230 BTM (AJB),
    1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) ......................................19

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984)........................................................11

*Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    949 F.2d 243 (8th Cir. 1991) .................................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................6

*In re N. Dist. of Cal. Dalkon Shield IUD Prods., Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) .................................................................23

*O'Connor v. Boeing North Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) .....................................................20, 22

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)................................................3, 4, 5, 12, 14

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)...........................................................3, 4, 21

*In re PaineWebber Ltd. P'ships Litigation*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
    117 F.3d 721 (2d Cir. 1977)..............................................................7, 18

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996)................................................................7

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...................................18

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977).............................................................6

*Schaefer v. Overland Express Family of Funds*,
   169 F.R.D. 124 (S.D................................................................................21

*Schlagal v. Learning Tree Int'l*,
   No. CV 98-6384 ABC (Ex),
   1999 WL 672306 (C.D. Cal. Feb. 23, 1999)................................21, 22

*Schneider v. Traweek*,
   No. CV 88-0905 RG (KX),
   1990 WL 132716 (C.D. Cal. July 30, 1990)......................................20

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985)........................................................21

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999).............................................................6, 7

*Silver v. H&R Block, Inc.*,
   105 F.3d 394 (8th Cir. 1997)..............................................................10

*TSC Industries v. Northway, Inc.*,
   426 U.S. 438 (1976)..............................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)..............................................................3, 4

*In re Unioil Sec. Litig.*,
   107 F.R.D. 615 (C.D. Cal. 1985)........................................................21

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
   122 F.R.D. 251 (C.D. Cal. 1988) ............................................................21

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989).................................................................4

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)................................................................4

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (1985) *aff'd*,
   798 F.2d 35 (2d Cir. 1986).......................................9, 12, 13, 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz., 1989)........................................15

*Weinberger v. Kendrick* ,
   698 F.2d 61, 74 (1982) ..................................................................13

*Wellington v. Alexy,*
   155 F.R.D. 654 (N.D. Cal. 1994) ..............................................20

*Wilson v. Airborne, Inc.*,
   No. 07-770-VAP,
   2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ...........................17

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994).....................................................10

*Young v. Katz,*
   447 F.2d 431 (5th Cir. 1971).....................................................12

**STATUTES**

Rule 10b-5 ...........................................................................................7

Rule 23 ..............................................................................................19

Rule 23(a) .....................................................................................20, 23

Rule 23(a)(1).......................................................................................20

Rule 23(a)(2) ..................................................................................20, 21

Rule 23(a)(3) ........................................................................................21

Rule 23(a)(4) .......................................................................................22,

Rule 23(b) ............................................................................................20

Rule 23(b)(3) .......................................................................................23

Rule 23(e) ..........................................................................................4, 5

Rule 23's...........................................................................................19, 20

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, § 20.45 (3rd ed. 1995) ..................................5

Stephanie Plancich, Ph.D, Svetlana Starykh,
*2008 Trends in Securities Class Actions,*
   (NERA Dec. 2008); ..............................................................................9

Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlement,*
   *2008 Review and Analysis* ..................................................................10

1  TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2  PLEASE TAKE NOTICE, that, pursuant to an Order of the Court dated March

3  25, 2009 (the "Preliminary Approval Order"), on September 14, 2009, at 9:30 a.m., or

4  as soon thereafter as counsel may be heard, before the Honorable Gary A. Feess,

5  United States District Judge, Lead Plaintiff will and hereby does move for an order

6  approving the proposed settlement of this class action for $2 million (the

7  "Settlement"). This motion is based upon the accompanying Memorandum of Points

8  and Authorities in Support of Final Approval of Class Action Settlement, the

9  Memorandum of Points and Authorities in Support of Lead Counsel's Petition for an

10  Award of Attorneys' Fees and Reimbursement of Expenses, the Declaration of Jeffrey

11  M. Haber in Support of Final Approval of Settlement and Petition for an Award of

12  Attorneys' Fees and Reimbursement of Expenses (the "Haber Decl."), the Declaration

13  of Joseph R. Seidman, Jr. in Support of Final Approval of Settlement and Petition for

14  an Award of Attorneys' Fees and Reimbursement of Expenses (the "Seidman Decl."),

15  the Amended Stipulation of Settlement dated as of March 13, 2009 (the

16  "Stipulation"), all other pleadings and matters of record, and such additional evidence

17  or argument as may be presented at the hearing.

18  **I.     PRELIMINARY STATEMENT**

19  Lead Plaintiff, District No. 9, International Association of Machinists &

20  Aerospace Workers Pension Trust ("Lead Plaintiff"), by lead counsel, Bernstein

21  Liebhard LLP ("Bernstein Liebhard"), respectfully submits this memorandum of

22  points and authorities in support of its motion, pursuant to Federal Rule of Civil

23  Procedure 23(e) for final approval of the settlement of this action (the "Litigation") as

24  set forth in the Stipulation.[1] This class action has been settled for $2 million, in cash,

25  plus accrued interest (the "Settlement Fund"), and results solely from Lead Plaintiff's

26  vigorous prosecution and arm's-length settlement negotiations. No portion of the

27

28  ───────────────
[1] All undefined terms have the definitions set forth in the Stipulation.

Case No. C-00-3645 JCS

Settlement Fund came from any fund created by any enforcement proceeding of the government.  The Settlement is noteworthy in light of the vigorously-contested Litigation and, particularly, the difficulties in pleading and proving numerous elements of Plaintiff's claims, such as falsity, scienter, loss causation and damages. The Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses and the risks inherent in continuing the Litigation.

Lead Counsel, who is experienced in prosecuting securities class actions, has concluded on the basis of, among other things, a thorough investigation of the events complained of and the law applicable to Lead Plaintiff's claims, motion practice, confirmatory discovery of key documents, a lengthy interview of an LJ representative, and consideration of all the facts and circumstances of this case, that the Settlement is a very good result and is eminently fair, reasonable and adequate to the Class.[2] Therefore, Lead Plaintiff respectfully submits that the Court should approve the Settlement that has been agreed to by the Parties.

Further confirming the fairness of the Settlement is the favorable reaction by the Class to the Settlement.  Pursuant to the Preliminary Approval Order, over 22,640 copies of the Court-approved Notice of Pendency and Settlement of Class Action and Settlement Hearing Thereon ("Notice") were sent to Class members, and a Publication Notice of Settlement was published in the national edition of *Investors Business Daily* on April 9, 2009.  Fraga Aff. at ¶¶ 6, 10.  In the Notice, Class members were advised that the deadline for filing an objection was August 24, 2009.  As of that date, and to

---

[2]  The "Class," or "Settlement Class," which this Court preliminary certified on March 25, 2009, consists of all persons who purchased LJ common stock during the period February 15, 2007 through September 6, 2007, inclusive (the "Class Period"), and who were damaged thereby.  Excluded from the Settlement Class are Defendants, members of the immediate family of the Individual Defendants (Yu Chuan Yih, and Hon Tak Ringo Ng – both of whom were not served), any entity in which any Defendant has or had a controlling interest, current and former directors and officers of LJ and the legal representatives, heirs, successors, or assigns of any such excluded Person or entity.  Also excluded from the Settlement Class are those Persons who timely and validly requested exclusion from the Settlement Class pursuant to the Notice of Pendency and Settlement of Class Action and Settlement Hearing Thereon. *See* Affidavit of Jose C. Fraga, sworn to September 3, 2009 (the "Fraga Affidavit" or "Fraga Aff."), Ex. A., attached as Exhibit 1 to the Haber Declaration.

date, only one objection to the settlement and one request for exclusion from the Class was received. *Id.* at ¶ 11; Haber Decl. ¶¶ 7, 61, 77. This near-unanimous response is especially significant because the Class includes, in addition to individuals, many sophisticated institutional investors, who employ counsel to advise, assist and represent them in analyzing the merits of class action settlements. Haber Decl. ¶ 78.

Moreover, as discussed below, the one objector, Anna Brandt, advances nothing more than wild speculation and an animus toward securities class actions in general as her reason to object to the Settlement. Accordingly, Ms. Brandt's objection should be rejected.

As demonstrated herein and in the accompanying Haber Declaration, the Settlement represents a good result for the Class and should be approved in all respects.

## II.   FACTUAL BACKGROUND

Lead Counsel respectfully refers the Court to the Haber Declaration at ¶¶ 24-33 for a discussion of the facts of this Litigation.

## III.   PROCEDURAL HISTORY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the Haber Declaration at ¶¶ 15-23 for a recitation of the procedural history of the Litigation.

## IV.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Ninth Circuit follows a "strong judicial policy that favors settlements," particularly in complex class actions. *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an

overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fundamentally fair, adequate and reasonable." *Pacific Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The Ninth Circuit has identified factors that may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. *Accord, Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); *Torrisi*, 8 F.3d at 1375.

The district court must exercise "sound discretion" in approving a settlement. *Officers for Justice*, 688 F.2d at 625; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). However, where, as here, a proposed class action settlement has been reached after arm's-length negotiation conducted by capable counsel, it is presumptively fair. *See Linney v. Cellular Alaska P'ship*, Nos. C 96 3008 DLJ, C 97 0203 DLJ, C 97 0425 DLJ, C 97 0457 DLJ, 1997 WL 450064, at *4 (N.D. Cal. July 18, 1997). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

1   must be limited to the extent necessary to reach a reasoned judgment that the

2   agreement is not the product of fraud or overreaching by, or collusion between, the

3   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

4   adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. *See also Hanlon*,

5   150 F.3d at 1027. The Ninth Circuit defines the limits of the inquiry to be made by

6   the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial
> or rehearsal for trial on the merits. Neither the trial court nor this court is
> to reach any ultimate conclusions on the contested issues of fact and law
> which underlie the merits of the dispute, for it is the very uncertainty of
> outcome in litigation and avoidance of wasteful and expensive litigation
> that induce consensual settlements. The proposed settlement is not to be
> judged against a hypothetical or speculative measure of what might have
> been achieved by the negotiators.

13   *Officers for Justice*, 688 F.2d at 625.

14   While approval under Rule 23(e) of settlements involving settlement classes

15   requires closer judicial scrutiny than approval of settlements where class certification

16   has been litigated (*Manual for Complex Litigation*, § 20.45 (3rd ed. 1995)), as

17   explained below and in the Haber Declaration, application of these criteria

18   demonstrates that the Settlement warrants the Court's approval.

19   Moreover, "[t]he recommendations of plaintiffs' counsel should be given a

20   presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.

21   Cal. 1979). The presumption of reasonableness in this action is fully warranted

22   because the Settlement is the product of arm's-length negotiations conducted by

23   capable counsel who are well experienced in securities litigation. *M. Berenson Co.*,

24   *Inc., v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Ellis*,

25   87 F.R.D. at 18. Here, it is the considered judgment of experienced counsel that the

26   Settlement for $2 million in cash is a fair, reasonable and adequate settlement of this

27   case.

28

## V.   THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.   The Settlement Appropriately Balances the Risks of Litigation and the Benefits to the Class of Certain Recovery

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation, the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F Supp. at 616-17.  In other words, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

In the context of approving class action settlements, courts attempting to weigh these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).  This is even more so today, in this post-Private Securities Litigation Reform Act of 1995 ("PSLRA") environment, amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  In particular, the Ninth Circuit's decisions in *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), and its progeny have interpreted the PSLRA's heightened pleading standards in an expansive manner and have established what is commonly accepted to be the most stringent standards of any circuit to pleading a successful Section 10(b) claim.

1   Here, a balance of these factors weighs heavily in support of approval of the

2   Settlement and unquestionably outweighs another distinct possibility – no recovery

3   for the Class.

4   **B.   Continued Litigation Poses Substantial Risk in Establishing**
          **Liability and Damages**
5

6   The risks of continuing the Litigation are considerable.  To establish a violation

7   of Section 10(b), or Rule 10b-5 promulgated thereunder by the Securities Exchange

8   Commission, Lead Plaintiff would have had to prove that Defendants (1) made

9   misstatements or omissions of material fact, (2) with scienter, (3) in connection with

10  the purchase or sale of securities, (4) upon which Lead Plaintiff relied, and (5) that

11  Lead Plaintiff's reliance on the misrepresentation was the proximate cause of its

12  injury. *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999); *Paracor Fin., Inc. v.*

13  *Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996).  The burden of proof

14  with respect to this claim has historically been quite significant, as plaintiffs must

15  establish that each defendant was responsible for material omissions and/or

16  misstatements that caused damages to the class, and that each defendant acted with

17  scienter. *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Ernst & Ernst*

18  *v. Hochfelder*, 425 U.S. 185, 193 (1976); S*ilicon Graphics,* 183 F.3d at 974.  Plaintiffs

19  in the Ninth Circuit must show that defendants acted with actual knowledge or

20  deliberate disregard for the truth. *Silicon Graphics*, 183 F.3d at 979.

21  Thus, to establish Defendants' liability, Lead Plaintiff would have to prove that

22  Defendants made misleading statements concerning LJ's fourth quarter and year-end

23  2006 financial results, that the information was material to an investor in determining

24  whether to invest in LJ stock, that the information would have materially affected the

25  price of the stock, and that Defendants withheld or misrepresented information either

26  with actual intent to deceive, manipulate or defraud, or that Defendants deliberately

27  disregarded these facts and their consequences. *Id*. at 974.

28

1         The issues were complex and hotly contested by the Parties.[3]    Because the

2    Litigation is subject to the PSLRA, Lead Plaintiff faced the risk that its claims would

3    not survive Defendants' attacks regarding, *inter alia*, liability and scienter.

4    Defendants denied (and have continued to deny) that they committed any wrongdoing.

5    Confirmatory discovery only highlighted LJ's denials.  Haber Decl. ¶¶ 4, 40.  As

6    shown in LJ's motion to dismiss, LJ raised many arguments and competing inferences

7    to counter Lead Plaintiff's scienter allegations.  There is no certainty that the

8    competing inferences raised by Defendants would not have persuaded the Court to

9    dismiss the Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308

10    (2007).

11         Although Lead Plaintiff believes that its claims have merit, surviving the

12    pending motion to dismiss, as well as a motion for summary judgment that

13    Defendants undoubtedly would have made had the Litigation continued, and

14    establishing liability and damages at trial, would by no means be guaranteed.

15    Assuming that Lead Plaintiff's claims survived Defendants' motions for summary

16    judgment after discovery was completed, at trial Defendants likely would have

17    presented evidence supporting their contention that they had a reasonable, good-faith

18    basis for believing that their statements were true and accurate when made and that, at

19    most, they were merely negligent in their reporting of LJ's financial information.

20         In addition, the risks of establishing liability and the expected conflicting

21    testimony and evidence would be exacerbated by the following risks inherent in all

22    shareholder litigation under Section 10(b):  the unpredictability of a lengthy and

23    complex jury trial where witnesses could suddenly become unavailable or jurors could

24    react to the evidence in unforeseen ways; and the risk that a jury would find that some

25

26

---

27    [3] Although this case was not an Enron-style securities fraud case in its scope and magnitude – there was no restatement and it concerned missed earnings by approximately $700,000 – it nevertheless involved

28    complicated tax and accounting issues and their impact on LJ's financial statements, which required consultation with an accounting consultant.

1    or all of the misrepresentations and omissions were not material during part or all of

2    the Class Period.

3         Even if Lead Plaintiff was able to overcome the obstacles to establishing

4    liability, Counsel is mindful of the risks in proving damages at trial. The parties

5    would likely disagree on the amount of damages that would be recoverable if Lead

6    Plaintiff had prevailed on each claim. The issues on which they would likely disagree

7    include: (a) the appropriate economic model for determining the amount by which LJ

8    common stock was allegedly artificially inflated (if at all) during the Class Period; (b)

9    the amount by which LJ stock was inflated (if at all) during the Class Period; (c) the

10   effect of various market forces influencing the trading price of LJ stock at various

11   times during the Class Period; and (d) the extent to which the allegedly false and

12   misleading statements influenced (if at all) the trading price of LJ stock at various

13   times during the Class Period. Such disagreement would undoubtedly be reflected in

14   expert testimony for both sides. In the "battle of experts," it is impossible to predict

15   with any certainty which arguments would find favor with the jury. *See In re Warner*

16   *Commc'ns Sec. Litig.,* 618 F. Supp. 735, 744-45 (1985); *see also Behrens v. Wometco*

17   *Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.

18   1990). Thus, even if the Class prevailed in establishing liability, significant additional

19   risks would remain in establishing the existence of damages.

20        More significantly, Lead Plaintiff has recovered a good amount of the estimated

21   damages allegedly suffered by Class members. The $2 million Settlement Fund

22   amounts to approximately 4.5% of the best case scenario recoverable damages – $44

23   million – as measured by Plaintiff's damages consultant, Michael Marek of Financial

24   Markets & Analyses. This result exceeds the median securities class actions

25   settlement. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (district

26   court did not abuse discretion in finding settlement was an "excellent" result in light

27   of the risk of establishing liability and damages despite the fact that settlement

28   possibly represented only 4% of the total damages claimed). *See also* Stephanie

1  Plancich, Ph.D, Svetlana Starykh, *2008 Trends in Securities Class Actions*, at 14

2  (NERA Dec. 2008) (finding that in 2008, the median ratio of settlement value to

3  investor losses was 2.7%) (attached as Exhibit 2 to the Haber Decl.); Ellen M. Ryan &

4  Laura E. Simmons, *Securities Class Action Settlement, 2008 Review and Analysis*, at 6

5  (Cornerstone Research 2008) (finding that the median settlement as a percentage of

6  estimated damages was 3.2% in 2008, compared to 2.8% for the period 2002 through

7  2007) (attached as Exhibit 3 to the Haber Decl.).

8      Moreover, even if Plaintiff was to prevail on the pending motion to dismiss, the

9  risk remained that the Class would receive no recovery at all.  Appellate decisions

10  affirming summary judgment and directed verdicts for defendants show confirm these

11  risks.  *E.g., Silver v. H&R Block, Inc.*, 105 F.3d 394 (8th Cir. 1997); *In re Worlds of*

12  *Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994); *McGonigle v. Combs*, 968 F.2d 810

13  (9th Cir. 1992); *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 949 F.2d

14  243 (8th Cir. 1991); *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507 (9th Cir.

15  1991).[4]

16      In addition to the difficulties Lead Plaintiff faced proving its claims, this would

17  be an expensive case to prosecute.  Since LJ is a Chinese company, and many

18  witnesses are located in Hong Kong and mainland China, the costs of discovery were

19  anticipated to be extremely high.  Haber Decl. ¶ 49.

20      Finally, recovery of a greater amount than provided by the Settlement was not

21  assured given the financial condition of LJ and the availability of D&O insurance.

22  First, the amount of D&O insurance available for payment was not substantial, and

23  was being, and will continue to be, used to pay defense costs.  Moreover, there were

24

25  [4] Even succeeding at trial does not eliminate the risk.  For example, in *In re Apple Computer Sec. Litig.*, NO.

26  C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sep 06, 1991), the jury rendered a verdict for plaintiffs after
an extended trial.  Based upon the jury's findings, recoverable damages could have exceeded $100 million.

27  However, weeks later, the court overturned the verdict, entered judgment notwithstanding the verdict for the
individual defendants and ordered a new trial with respect to the corporate defendant.

28

1   uncertainties as to whether the proceeds of the policy would be sufficient or available

2   for payment in the Settlement.  Second, LJ's financial condition and stock price makes

3   LJ a less desirable source for recovery.  As noted in Lead Plaintiff's memorandum in

4   support of preliminary approval, in the latter part of 2008, LJ had been reporting

5   declining revenues.  That trend continued into 2009.  For example, on August 13,

6   2009, LJ reported a decline in revenues of 28% for the second quarter ended June 30,

7   2009, compared to the same quarter in the prior year, and an approximate 27% decline

8   in revenues for the first six months of the year, compared to the same period in 2008.

9   As of June 30, 2009, LJ had approximately $14 million in cash and cash equivalents.

10   Although this represents an increase over that which was reported at year end 2008,

11   LJ's cash position would still not be a desirable source of recovery.  In the August 13,

12   2009 release, LJ explained that its cash position was necessary to weather the effects

13   of the economic downturn and to fuel its future growth once economic conditions

14   improve.  Accessing LJ's cash position, therefore, could impair the Company's overall

15   financial condition, balance sheet, and future growth potential.  Haber Decl. ¶ 50.

16          In addition, at the time the Parties negotiated the Settlement, the price of LJ's

17   common stock traded in the range of $1.86 and $1.01 per share (adjusted for dividends

18   and splits).  Since that time, the price of LJ stock has only marginally improved.  For

19   example, during August 2009, LJ's stock traded in the range of at $1.68 and $3.10 per

20   share (adjusted for dividends and stock splits).  Haber Decl. ¶ 51.

21          Thus, careful consideration of the above risks further supports approval of the

22   Settlement as fair, reasonable, and adequate.

23   **C.   Balancing the Certainty of an Immediate Recovery Against the
24          Expense and Likely Duration of Trial Favors Settlement**

25          The immediacy and certainty of a recovery is a factor for the Court to balance

26   in determining whether the Settlement is fair, reasonable, and adequate.  *E.g., Girsh v.*

27   *Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  Courts consistently have held that "[t]he

28   expense and possible duration of the litigation are major factors to be considered in

     evaluating the reasonableness of this settlement."  *Milstein v. Huck*, 600 F. Supp. 254,

1  267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F.

2  Supp. at 616-17, *Bullock v. Adm'r of Kircher's Estate*, 84 F.R.D. 1, 10 (D.N.J. 1979).

3  Therefore, the Settlement must be balanced against the expense and delay in achieving

4  a larger result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

5          Approval of the Settlement will mean a guaranteed recovery for Class

6  members. If not for the Settlement, the case would have continued to be contested by

7  all Parties. Defendants have demonstrated a commitment to defend the case through

8  and beyond trial, if necessary, and are represented by well-respected and capable

9  counsel. A trial would occupy the Court and several attorneys on both sides for many

10  weeks or months, and would require substantial expert testimony on both sides. The

11  inherent uncertainty and substantial expense of a trial could impact (and certainly

12  delay) any eventual recovery for the Class.

13          Moreover, a judgment favorable to Lead Plaintiff would, inevitably, be the

14  subject of post-trial motions and appeal, which could prolong the case even further.

15  *See Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 745 (delay from appeals is a factor

16  to be considered). Therefore, delay, not just at the trial stage but though post-trial

17  motions and the appellate process as well, could force Class members to wait years for

18  any recovery, further reducing its value. Accordingly, where the relative strengths of

19  the parties' claims and defenses have been recognized, early settlement of the

20  Litigation before significant additional resources have been expended will benefit the

21  Class. As a result of the Settlement, Class members will be compensated now rather

22  than risk a wholly speculative payment of a possible larger (or lesser) amount years

23  from now.

24          It is important to balance the Settlement against the numerous uncertainties that

25  would exist in continuing the Litigation. Moreover, as the Ninth Circuit has made

26  clear, the very essence of a settlement agreement is compromise, "'a yielding of

27  absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624

28  (citation omitted):

> Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ....

*Id.* (citation omitted); *see also Ellis*, 87 F.R.D. at 19 (as a quid pro quo for not having to undergo the uncertainty and expense of litigation, the plaintiffs must be willing to moderate the measure of their demands). Accordingly, the fact that the Class potentially might have achieved a greater recovery at trial is not dispositive and does not preclude the Court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval. *E.g., Mego Fin. Corp.*, 213 F.3d at 459; *See Warner Communications*, 618 F. Supp. at 745.

**D.    The Parties Could Sufficiently Identify The Strengths and Weaknesses of Their Cases**

"[T]he stage of the proceedings and the amount of discovery completed" is a factor that the courts consider in determining the fairness, reasonableness and adequacy of a settlement. *Warner Commc'ns*, 618 F. Supp. at 741 (citation omitted); *see also Mego Fin. Corp.*, 213 F.3d at 459; *Girsh*, 521 F.2d at 157; *Weinberger v. Kendrick*, 698 F.2d 61, 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Pursuant to the PSLRA, Lead Plaintiff was precluded from conducting any formal discovery in the Litigation until the Complaint was sustained. After the motion to dismiss the Complaint was fully briefed, the Parties entered into settlement discussions. After a settlement in principle was reached, Lead Counsel reviewed key documents and interviewed an LJ representative as part of confirmatory discovery. The documents reviewed, as well as the confirmatory interview, support the Settlement – they confirmed the difficulties litigating the case and highlighted Defendants' denials of wrongdoing. Haber Decl. ¶ 40.

In addition to formal discovery, Lead Counsel's investigation also included a review of LJ's SEC filings, securities analysts' reports and advisories about LJ, press releases issued by LJ, and media reports about LJ. Lead Counsel's investigators also

interviewed numerous former employees of LJ. Lead Counsel also consulted with a damages consultant, at the time of drafting the Complaint and thereafter, and an accounting consultant. The accounting expert was important while drafting the Complaint because this Litigation involved complex tax issues. Haber Decl. ¶ 17. This information was also invaluable in negotiation of the Settlement, confirmatory document review and analysis, the confirmatory interview, and in evaluating the fairness of the Settlement to the Class.

Plaintiff's damages consultant analyzed the potential recoverable damages and the materiality of the alleged false and misleading statements. The information provided by the damages expert also assisted in formulating the Plan of Allocation in connection with the Settlement.

Accordingly, at the time the parties reached an agreement to settle, Lead Plaintiff had sufficient information to assess the value of its claims and to consider the fairness, reasonableness, and adequacy of the Settlement.

**E.     The Settlement Is the Product of Arm's-Length Negotiations**

When evaluating a Settlement, the Court must satisfy itself that the settlement was not the "product of fraud or overreaching by, or collusion between the negotiating parties. . . ." *Officers for Justice*, 688 F.2d at 625. This is particularly true in cases where a class has not yet been certified. The Settlement easily meets even the heightened standard for approval.

The Settlement negotiations here were extensive, hard-fought and at arm's length, and took place only after negotiating among highly experienced and skilled attorneys representing the parties. The negotiation process entailed numerous telephonic discussions and a face-to-face meeting, always in the spirit of professional – but vigorous – advocacy of the Parties' respective interests. The terms of the Settlement were strenuously with significant give and take by all parties and their insurance carriers until the final terms were reached. Haber Decl. ¶ 21.

**F.    The Recommendations of Experienced Counsel Favors Approval of the Settlement**

This case has been litigated by experienced and competent counsel on both sides. Defense counsel, Morrison Foerster, LLP, a nationally respected law firm, has an abundance of experience in this type of litigation. Likewise, Lead Counsel has had many years of experience in litigating securities fraud actions, and in assessing the relevant merits of each side's case. The Settlement was aggressively negotiated by both sides.

Thus, experienced counsel, negotiating at arm's length, have weighed the above factors in the context of this case and recommend the Settlement. As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa.1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"). That qualified and well-informed counsel, operating at arm's length, endorse the Settlement as being fair, reasonable and adequate to the Class favors this Court's approval of the Settlement.

**G.    The Reaction of the Class Supports Approval of the Settlement**

Over 22,640 Notices were sent to potential Class members and a summary notice was published in the national edition of *Investors Business Daily*. Fraga Aff. at ¶¶ 6, 10. The time period for objecting to the Settlement expired on August 24, 2009. As noted above, to date Lead Counsel has received only one objection to the Settlement and one request for exclusion from the Class (Fraga Aff., Ex. C.). Such an endorsement strongly supports the Settlement. *See, e.g., Hanlon*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *Mego Fin. Corp.*, 213 F.3d at 459; *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1419 (D. Ariz., 1989)

1    Further, the one objection, filed by Anna Brandt, is groundless.  As an initial

2    matter, it appears that Ms. Brandt *made* money on her Class Period transactions, and

3    is ineligible to receive relief in the Settlement.  According to the letter from her broker

4    (attached, with Ms. Brandt's objection as Exhibit 6 to the Haber Decl.), Ms. Brandt

5    had a pre-Class Period position of 206,500 shares of LJ stock.[5]  On April 17, 2007,

6    Ms. Brandt purchased 500 shares of LJ common stock.  Thereafter, she sold 30,000

7    shares of LJ stock, reducing her position to 177,000 shares as of September 6, 2007.

8    Thus, she is a net seller, who benefitted from the alleged artificial inflation in the

9    stock.

10   Moreover, although Ms. Brandt claims to have purchased 500 shares of LJ

11   stock during the Class Period, she does not identify the dates on which she sold the

12   30,000 shares purchased prior to the Class Period.  As such, there is no way for the

13   Court to determine if she sold 500 shares prior to the partial disclosure of July 16,

14   2007.  Under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), she would lack

15   standing to assert an objection to the proposed settlement because investors who buy

16   and sell stock *before* any corrective disclosure suffer no harm – they bought and sold

17   artificially inflated stock.

18   As to the substance of Ms. Brandt's objection, there is none.  Under the heading

19   "Defects in the Proposed Settlement," Ms. Brandt contends that the proposed

20   settlement is defective in three ways:  (1) "[i]t is not in the best interests of current

21   [LJ]-shareholders ….";  (2) large shareholders will benefit at the expense of smaller

22   shareholders who choose not to submit a claim form;  (3) payment by LJ's insurer

23   "might" result in higher future premiums;  and (4) lead counsel "is in cahoots with the

---

[5] Although the February 2007 through September 2007 trade confirmations and monthly statements were provided by her broker, Ms. Brandt did not attach these documents to her Statement.  The failure to attach these documents is significant given the questions concerning her standing and ability to obtain relief under the settlement, and the broker's disclaimer that the information contained in the letter may not be complete and accurate ("[t]he information contained [in the letter] is obtained from sources believed to be reliable, but its accuracy or completeness is not guaranteed.  This report is for informational purposes only and is not an official report.").

1    schemers" referring the purported scheme of "corrupt brokers," "naked short sellers,"

2    "financial institutions," and LJ's management "to manipulate (depress) the price of

3    [LJ's] stock."[6] Each objection should be rejected.

4       The first objection is nothing more than an objection to securities class actions

5    generally. Ms. Brandt offers no reason, explanation, or evidence to support her

6    contention. As such, her objection is improper and should be overruled. *Wilson v.*

7    *Airborne, Inc.*, No. 07-770-VAP, 2008 WL 3854963, at **7-8 (C.D. Cal. Aug. 13,

8    2008) (rejecting objections that do not address the terms of the settlement).

9       The second objection should be rejected as it ignores the distribution of money

10    under the plan of allocation. As set forth *infra* at 18-19, the proposed Plan of

11    Allocation is "rationally based on legitimate considerations," *In re PaineWebber Ltd.*

12    *P'ships Litig.* 171 F.R.D. 104, 131 (S.D.N.Y. 1997) (citations omitted), *aff'd*, 117

13    F.3d 721 (2d Cir. 1977), and treats Class members (including Lead Plaintiff) fairly.

14    *See Mego Fin. Corp.*, 213 F.3d at 461.

15       The third and fourth objections are predicated on mere speculation. The

16    premiums that insurance companies require their insureds to pay are subject to various

17    factors, of which the Court can only speculate. In any event, this is not a basis to

18    claim that a proposed settlement is not reasonable.

19       As set forth in the Haber Declaration, the Settlement is the product of hard

20    fought, arm's-length negotiations between Lead Counsel and Defendants' counsel.

21    Accordingly, Ms. Brandt's fourth objection should be overruled.

22       Finally, as directed by the Court at the preliminary approval hearing, Lead

23    Counsel tried to discuss Ms. Brandt's objections with her, but Ms. Brandt wrote

24

25    [6] Ms. Brandt charges that "[t]his fraudulent matter was filed as part of a scheme to sell millions of non-existent shares cheaply to stockbrokers in exchange for their cooperation with participating financial

26    institutions in order to manipulate financial markets in general and to help gather assets for the benefit of the institutions involved." *Id.* at 1, 2. These wild, unsubstantiated accusations stand in stark contrast to the

27    allegations in the Complaint: Defendants allegedly made material misstatements concerning LJ's projected fourth quarter and year end 2006 earnings and net income, and as a result, Defendants artificially inflated the

28    price of LJ's common stock.

1  Counsel stating that she stands by her objection.  *See* Declaration of Joseph R.

2  Seidman, Jr. ¶6 and Ex. A thereto.

3  **VI.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED**

4      The Settlement provides for distributions to Authorized Claimants from the Net

5  Settlement Fund pursuant to the Plan of Allocation set forth in the Notice.  The Plan

6  of Allocation is based on Lead Plaintiff's theory of the case and reflects Lead

7  Plaintiff's contention that the price of LJ's common stock was artificially inflated by

8  reason of the allegedly false and misleading statements and omissions made by

9  Defendants during the Class Period.  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-

10  5138 VRW, 2007 WL 4171201, at *6 (N.D. Cal. Nov. 26, 2007).  *See also Warner*

11  *Commc'ns*, 618 F. Supp. at 745 (approving distribution plans that allocates the

12  settlement proceeds according to the relative strengths and weaknesses of the various

13  claims), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  At the final approval stage, "[a]n allocation

14  formula need only have a reasonable, rational basis [to warrant approval], particularly

15  if recommended by 'experienced and competent' class counsel."  *In re Am. Bank Note*

16  *Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

17      Lead Plaintiff submits that the proposed Plan of Allocation is "rationally based

18  on legitimate considerations," *PaineWebber,* 171 F.R.D. at 131 (citations omitted),

19  *aff'd*, 117 F.3d 721 (2d Cir. 1977), and treats Class members (including Lead

20  Plaintiff) fairly.  *See Mego Fin. Corp*, 213 F.3d at 461.

21      The Plan of Allocation reflects Lead Plaintiff's allegations that the truth

22  concerning LJ's fourth quarter and year-end 2006 financial results was partially

23  disclosed on July 16, 2007, when LJ disclosed that it would be unable to file its Form

24  20-F on time.  Lead Plaintiff also alleged that it was not until September 6, 2007 that

25  the Company revealed that it would not meet its fourth quarter and year end 2006

26  earnings estimates.

27

28

1  As such, the Plan of Allocation draws an important distinction among Class

2  Members who sold LJ stock before the end of the Class Period, bought after the partial

3  disclosure, or held LJ stock as of the end of the Class Period.  Haber Decl. ¶¶ 79-85.

4  Accordingly, the Plan of Allocation ensures an equitable pro rata distribution of

5  the Net Settlement Fund among all Authorized Claimants based solely on if and when

6  they purchased and sold shares, taking into account the relative amounts of artificial

7  inflation prevailing during certain segments of the Class Period.  "Pro-rata distribution

8  of settlement funds based on investment loss is clearly a reasonable approach."  *In re*

9  *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).  Plaintiff

10  submits that the Plan of Allocation is fair and reasonable and should be approved.

11  **VII.  FINAL CERTIFICATION OF THE PROPOSED CLASS FOR**
12  **PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

13  In the Preliminary Approval Order, the Court preliminarily certified the Class,

14  which, was defined as all individuals and entities that purchased or acquired LJ

15  common stock between February 15, 2007 and September 6, 2007, inclusive, and who

16  suffered damages thereby.  Final certification of the Class should now be entered for

17  purposes of settlement.

18  If all of Rule 23's requirements are met, a class may be certified for purposes of

19  settlement.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 592 (1997); *In re Mfrs Life Ins.*

20  *Co. Premium Litig.*, MDL No. 1109, Master File No. 96-CV-230 BTM(AJB), 1998

21  WL 1993385, at *3 (S.D. Cal. Dec. 21, 1998).  Courts have adopted a liberal

22  construction of Rule 23 in shareholder suits seeking class action certification.  *See,*

23  *e.g., Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (in determining

24  class certification, courts must be "mindful of the admonition of liberality toward

25  demands for class suit status in securities litigation").

26  As has been explained, "a district court must first find that a class satisfies the

27  requirements of Rule 23, regardless of whether it is certifying the class for trial or for

28  settlement."  *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 418 (S.D. Tex. 1999).

*See also Amchem*, 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the settlement-class context."). However, "the district court may take the proposed settlement into consideration when examining the question of certification." *Amchem*, 521 U.S. at 621. Additionally, "a district court [determining whether to certify a class for settlement purposes only] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Lease Oil*, 186 F.R.D. at 418.

In order to be certified, a class must satisfy the four requirements of Rule 23(a), and fit within one of the categories of class actions set forth in Rule 23(b). The Class here easily satisfies all of Rule 23's requirements and should be certified.

### A.     The Class is Sufficiently Numerous

Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all members is "impracticable." There is no fixed number of class members that either compels or precludes the certification of a class; indeed, classes consisting of twenty five members have been held large enough to justify certification. *See Wellington v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994).

Here, there are 272 record transferees of LJ common stock. Fraga Aff. at ¶¶ 3, 7. Pursuant to the Preliminary Approval Order, the Claims Administrator sent over 22,640 Notices to potential Class members throughout the country. *Id.* at ¶ 10. Therefore, the threshold for a presumption of impracticability of joinder is easily exceeded.

### B.     Common Questions of Law or Fact Exist

The commonality requirement of Rule 23(a)(2) is satisfied when common questions of law or fact are present. *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 330 (C.D. Cal. 1998). Class certification is appropriate because the claims against Defendants "arise out of the same set of operative facts and are based on common legal theories." *Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL

132716, at *6 (C.D. Cal. July 30, 1990).  *See also In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 801 (S.D. Cal. 1990) ("[T]he existence, nature, and significance of material omissions and misrepresentations are issues common to all class members."); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 254 (C.D. Cal. 1988); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618-19 (C.D. Cal. 1985).

Here, Plaintiff alleges that LJ's fourth quarter and year-end 2006 financial results were materially false and misleading.  Haber Decl. ¶¶ 26, 31.  This "common course of conduct," which affected all purchasers of LJ stock during the Class Period, is the hallmark of a securities class action.[7]  Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

## C.   Lead Plaintiff's Claims are Typical of Those of the Class

Under Rule 23(a)(3), claims are typical where the representative's claims "stem from the same event or course of conduct as other class members' claims and are based on the same legal theory as the absent members."  *Schlagal v. Learning Tree, Int'l*, No. CV 98-6384 ABC (Ex), 1999 WL 672306, at *3 (C.D. Cal. Feb. 23, 1999).  The claims of the representatives need not be identical to those of the class members, but the representatives must possess the same interest and suffer the same injury as the class members.  "'The typicality prerequisite may be met even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages by the representative parties and the other members of the class.'"  *Id.* (citation omitted).

Here, there is no conflict or antagonism between the Lead Plaintiff's interests and those of the members of the Class because the claims of all Class members derive from the same legal theories and allege the same set of operative facts.  Like all of the

---

[7]  *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  *See also Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398-99 (D. Or. 1996); *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128 (S.D. Cal. 1996).

1  Class members, Lead Plaintiff purchased its LJ common stock during the Class Period

2  at prices allegedly inflated by the material misstatements and omissions concerning

3  LJ's fourth quarter and year-end 2006 financial results.  Therefore, all Class members

4  were victims of the same alleged course of conduct.

### D.   Lead Plaintiff is an Adequate Class Representative

6  Under Rule 23(a)(4), Lead Plaintiff must also "'fairly and adequately protect

7  the interests of the class.'"  *See, e.g, O'Connor*, 184 F.R.D. at 335 (citation omitted).

8  The Ninth Circuit has held that representation is "adequate" when (i) counsel for the

9  class is qualified and competent; (ii) the representatives' interests are not antagonistic

10  to the interests of absent class members; and (iii) it is unlikely that the action is

11  collusive.  *In re Northern Dist. of Cal. Dalkon Shield IUD Prods., Liab. Litig.*, 693

12  F.2d 847, 855 (9th Cir. 1982).  As the court held in *Schlagal*, "[r]epresentation will

13  most likely be adequate where the representative's interests are comparable to those of

14  the absent class members." 1999 WL 672306, at *3.  Only a conflict that goes to the

15  very subject matter of the litigation will defeat a finding of adequacy.  *Id*.  No such

16  conflict exists here.

17  Lead Plaintiff's interests are co-extensive and do not conflict with Class

18  members' interests, and are typical of the claims of the other purchasers during the

19  Class Period.  Substantial common questions of fact and law exist and the Lead

20  Plaintiff's interests are aligned with those of the Class.

21  The only possible distinction between the representative and other class

22  members relates to the amount of damages each person may receive.  However,

23  "[d]ifferences in damage awards are inherent to almost any class action and,

24  consequently cannot overcome a class certification motion." *Schlagal*, 1999 WL

25  672306, at *5.  Thus, Lead Plaintiff has satisfied the requirement of Rule 23(a)(4).

26  Similarly, Lead Plaintiff's adequacy as representative is demonstrated by its

27  retention of experienced counsel to prosecute this case.  Counsel has extensive

28  experience in the area of securities litigation and has successfully prosecuted

numerous securities fraud class actions on behalf of injured investors across the country. *See* Haber Decl., Exhibits 5 and 7.

### E.     The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes certification when, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. This case easily meets Rule 23(b)(3)'s requirement.

#### 1.     Common Questions of Law and Fact Predominate over Individual Questions

As discussed above, there are a host of common questions of law and fact as to the members of the Class who Lead Plaintiff seeks to represent. These questions predominate over individual questions because Defendants' alleged conduct affected all Class members in the same manner – by making material misrepresentations concerning LJ's fourth quarter and year-end 2006 financial results.

In sum, because Lead Plaintiff alleges a continuous course of conduct committed by Defendants and directed against the members of the Class, the issues of law and fact that flow from that wrongful activity predominate over any individual issues. In such circumstances, a class action is not only appropriate, it is mandated by Rule 23. *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668-69 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v Epstein*, 516 U.S. 367 (1996).

#### 2.     A Class Action is Superior to other Available Methods for Resolving this Controversy

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any management problems that may have existed here – and Plaintiff knows of none – are eliminated by the Settlement.

## VIII. CONCLUSION

The Settlement of $2 million in cash, plus accrued interest, is a very good result reached by skilled counsel for all parties, recognizing the complexity and expense if this Litigation were to continue and eventually go to trial and through appeals, the risks attendant in further litigation, the present benefit of the Settlement to all members of the Class, and the arm's-length negotiations themselves. Moreover, the judicial system and the public benefit from the prompt resolution of potentially complex litigation. Lead Plaintiff respectfully requests that this Court approve the Settlement of this litigation as fair, reasonable, and adequate.

Dated this 4th day of September, 2009

Respectfully submitted,

**GLANCY BINKOW & GOLDBERG, LLP**

/s/
Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
1801 Avenue of the Stars, Suite 311
Los Angeles, Ca 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

**BERNSTEIN LIEBHARD LLP**
Jeffrey M. Haber
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218

**Lead Counsel for Lead Plaintiff and the Class**

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 08-02**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action.  My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On September 4, 2009, I caused to be served the following document:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF LEAD COUNSEL'S AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF**

**DECLARATION OF JEFFREY M. HABER IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**DECLARATION OF JOSEPH R. SEIDMAN, JR. IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**APPENDIX OF UNREPORTED DECISIONS IN SUPPORT OF LEAD PLAINTIFF'S PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

By posting this document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the following parties:

Vahn Alexander
valexander@faruqilaw.com

Saro H Balian
sbalian@mofo.com

Peter A Binkow
pbinkow@glancylaw.com

1  Mary K Blasy
   maryb@csgrr.com
2

3  Patrick J Coughlin
   patc@csgrr.com,lisamp@csgrr.com,e_file_sd@csgrr.com

4  Lionel Z Glancy
   lglancy@glancylaw.com
5

6  Michael M Goldberg
   mmgoldberg@glancylaw.com,info@glancylaw.com
7

8  Jeffrey M Haber
   haber@bernlieb.com

9  Khara Kessler
   kessler@bernlieb.com
10

11 Dan E Marmalefsky
   dmarmalefsky@mofo.com,skay@mofo.com
12

13 Darren J Robbins
   e_file_sd@csgrr.com

14 Laurence M Rosen
   lrosen@rosenlegal.com
15

16 Joseph R Seidman, Jr
   seidman@bernlieb.com

17 Dana Statsky Smith
   dsmith@bernlieb.com
18

19 Evan Jason Smith
   esmith@brodsky-smith.com

20 David C Walton
   davew@csgrr.com
21

22 Timothy J. MacFall
   macfall@bernlieb.com
23

   and also via First Class Mail upon the parties not registered as follows:
24

25 Ramzi Abadou
   Coughlin stoia Geller Rudman and Robbins
26 655 West Broadway, Suite 1900
   San Diego, CA 92101-4297

27 Elizabeth Shattuck Finberg
   Cohen Milstein Hausfeld and Toll
28 1100 New York Avenue N W
   Washington, DC 20005

---

1

Anna G. Brandt                                    Objector: Via Mail and E-Mail
789 Meadowbrook Lane

2

Chambersburg, PA 17201
annagbrandt@yahoo.com

3

4

I certify under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.   Executed on September 4, 2009, at Los

5

Angeles, California.

6

*s/ Peter A. Binkow*
Peter A. Binkow

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28