GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy (#134180)
Peter A. Binkow (#173848)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
Email: info@glancylaw.com

*Liaison Counsel for Lead Plaintiff District No. 9,
International Association of Machinists & Aerospace
Workers Pension Trust and the Class*

BERNSTEIN LIEBHARD LLP
Jeffrey M. Haber admitted *pro hac vice*
Joseph R. Seidman, Jr. admitted *pro hac vice*
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
Fax: (212) 779-3218

*Lead Counsel for Lead Plaintiff District No. 9,
International Association of Machinists & Aerospace
Workers Pension Trust and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **IN RE LJ INTERNATIONAL, INC. SECURITIES LITIGATION** | **CV-07-6076-GAF (JWJx)** |
| | <u>**CLASS ACTION**</u> |
| | **NOTICE OF MOTION AND MOTION IN SUPPORT OF LEAD COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **Hearing: September 14, 2009 at 9:30 a.m.** |

25198v1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  HISTORY OF THE LITIGATION ................................................................... 3

III. THE PERCENTAGE REQUESTED IS REASONABLE .................................... 3

    A.   The Legal Standards Governing the Award of Attorneys' Fees ................ 3

        1.   Reasonable Percentage of the Fund Recovered Is the
           Appropriate Method for Awarding Attorneys' Fees in
           Common Fund Cases ....................................................................... 3

    B.   The Fee Request is Reasonable Under the Percentage of Recovery
        Method ............................................................................................... 6

    C.   The Reasonableness of the Fee Requested is Confirmed by a
        Lodestar Analysis ............................................................................... 6

    D.   Consideration of Relevant Factors Used by the Courts in the Ninth
        Circuit Justify an Award of a 25% Fee in This Case ............................. 9

        1.   The Result Achieved ....................................................................... 9

        2.   The Risks of the Litigation ........................................................... 10

        3.   The Skill Required and the Quality and Efficiency of the
           Work ............................................................................................. 12

        4.   The Novelty and Difficulty of the Questions Presented ................ 12

        5.   The Contingent Nature of the Case and the Financial Burden
           Carried by the Plaintiff ................................................................. 13

        6.   The Customary Fee ....................................................................... 14

        7.   A 25% Fee Has Been Awarded in Settlements of Similar
           Amounts in this Circuit and Elsewhere ........................................ 15

    E.   The Reaction of the Class Supports the Requested Award .................... 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
OBTAINED ..................................................................................................17

V.   CONCLUSION.............................................................................................18

# TABLE OF AUTHORITIES

## CASES

*In re Aetna, Inc.*,
  No. CIV.A.MDL 1219,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001)..............................................................8

*In re AT&T Corp., Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ..............................................................10

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ..............................................................17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)..................................................6

*Alpine Pharmacy v. Chas. Pfizer & Co.*,
  481 F.2d 1045 (2d Cir. 1973) ..............................................................15

*Behrens v. Wometco Enters.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*,
  899 F.2d 21 (11th Cir. 1990) ..............................................................9, 17

*Blum v. Stenson*,
  465 U.S. 886 (1984)...................................................................... *passim*

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..............................................................4

*Bratcher v. Bray-Doyle Indep. Sch. Dist., No. 42*,
  8 F.3d 722 (10th Cir. 1993) ..............................................................17

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ..............................................................5

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ..............................................................5

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885)..............................................................4

*In re Computron Software Inc.*,
   6 F. Supp. 2d 313 (D.N.J. 1998) ...............................................................8

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..............................................................7, 8

*In re Coordinated Pretrial Proceedings in*
*Petroleum Prods. Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) .............................................................5, 7

*Edmonds v. United States*,
   658 F. Supp. 1126 (D.S.C. 1987) ..........................................................17

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................12

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ......................................................................5

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ..................................................................11

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ...................................................................5

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ....................................................................5

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...............................................................................7, 9

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCX),
   2005 WL 1594389 (C.D. Cal. June 10, 2005).....................................11, 12, 16

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................8, 13

*In re Immunex Sec. Litig.,*
   864 F. Supp. 142 (W.D. Wash. 1994) ...................................................6

*Johnson v. Ga. Highway Express, Inc.,*
   488 F.2d 714 (5th Cir. 1974) ........................................................12

*In re King Res. Co. Sec. Litig.,*
   420 F. Supp. 610 (D. Colo. 1976)............................................... 11-12

*Kirchoff v. Flynn,*
   786 F.2d 320 (7th Cir. 1986) .....................................................5, 14

*Kurzweil v. Phillip Morris Co.,*
   No. 94-2373,
   1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)........................................9

*Lindy Bros. Builders, Inc. of Phila. v.*
*Am. Radiator & Standard (Lindy Bros II),*
   540 F.2d 102 (3d. Cir. 1976) .......................................................10

*Lindy Bros. Builders, Inc. of Phila. v.*
*Am. Radiator & Standard Sanitary Corp.,*
   487 F.2d 161 (3d Cir. 1973) ........................................................7

*Lipton v. Pathogenesis Corp.,*
   284 F.3d 1027 (9th Cir. 2002) .....................................................11

*Local 56, United Food & Commercial Workers*
*Union v. Campbell Soup Co.,*
   954 F. Supp. 1000 (D.N.J. 1997)....................................................8

*McKenzie Constr., Inc. v. Maynard,*
   823 F.2d 43 (3d Cir. 1987) ........................................................15

*In re M.D.C. Holdings Sec. Litig.,*
   No. CV89-0090E (M),
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990)........................................14

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ......................................................15

*Meyer v. Citizens & S. Nat'l Bank,*
   117 F.R.D. 180 (M.D. Ga. 1987)........................................................17

*Miltland Raleigh-Durham v. Myers,*
   840 F. Supp. 235 (S.D.N.Y. 1993) ...................................................17

*Missouri v. Jenkins,*
   491 U.S. 274 (1989).........................................................................7

*N.Y. State Ass'n for Retarded
Children, Inc. v. Carey,*
   711 F.2d 1136 (2d Cir. 1983) ...........................................................7

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) .........................................................4, 6

*Pennsylvania v. Delaware Valley Citizens'
Council for Clean Air,*
   483 U.S. 711 (1987).........................................................................7

*Phemister v. Harcourt Brace Jovanovich, Inc.,*
   No. 77 C 39,
   1984 WL 21981 (N.D. Ill. Sept. 14, 1984).......................................14

*Powers v. Eichen,*
   229 F.3d 1249 (9th Cir. 2000) ....................................................5, 6, 7

*Prandini v. Nat'l Tea Co.,*
   557 F.2d 1015 (3d Cir. 1977) ...........................................................9

*In re Prudential-Bache Energy Income P'ships Sec. Litig.,*
   No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)........................13

*In re Prudential Ins. Co. of Am.,*
   148 F.3d 283 (3d Cir. 1998) .............................................................8

*Ressler v. Jacobson,*
   149 F.R.D. 651 (M.D. Fla. 1992) ......................................................7

*In re Silicon Graphics Inc. Sec. Litig.,*
   183 F.3d 970 (9th Cir. 1999) .....................................................12, 13

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ................................................................4

*Skelton v. GMC,*
  860 F.2d 250 (7th Cir. 1988) .................................................................8

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ....................................................8

*Spencer v. Comserv Corp.,*
  No. Civ 4-84-794,
  1986 WL 15155 (D. Minn. Dec. 30, 1986) ..........................................7

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993)................................................................5

*Taubenfeld v. AON Corp.,*
  415 F.3d 597 (7th Cir. 2005) ..............................................................15

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ..............................................................4, 6

*Trustees v. Greenough,*
  105 U.S. 527 (1881)..............................................................................4

*Van Vranken v. Atl. Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995)......................................................8

*In re Vantive Corp. Sec. Litig.,*
  283 F.3d 1079 (9th Cir. 2002) ...........................................................11

*Vincent v. Hughes Air W., Inc.,*
  557 F.2d 759 (9th Cir. 1977) ...............................................................4

*Vizcaino v. Microsoft Corp.,*
  142 F. Supp. 2d 1299 (W.D. Wash. 2001) ........................................12

*Vizcaino v. Microsoft Corp. (Vizcaino I),*
  290 F.3d 1043 (9th Cir. 2002) ....................................................5, 8, 14

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,*
    798 F.2d 35 (2d Cir. 1986) ..............................................................12

*In re Wash. Public Power Supply*
*Sys. Sec. Litig.(WPPSS),*
    19 F.3d 1291 (9th Cir. 1994) ........................................... *passim*

*Wheeler v. Durham City Bd of Educ.,*
    88 F.R.D. 27 (M.D.N.C. 1980)..................................................17

**DOCKETED CASES**

*Bellocco v. Curd (Uniroyal Tech. Corp.),*
    No. 8:02-CV-1141 (M.D. Fla. 2006)................................16

*In re Impax Labs., Inc. Sec. Litig.,*
    No. C-04-4802-JW (N.D. Cal. 2009) ...............................15

*In re MCSi, Inc. Sec. Litig.,*
    No. 3:03-cv-015 (WHR) (S.D. Ohio 2008) .......................16

*In re Party City Corp. Sec. Litig.,*
    No. 2:99-CV-01353 (D.N.J. 2003) ...................................15

*In re SeraCare Life Sci., Inc. Sec. Litig.,*
    No. 05-CV-2335-H(CAB) (S.D. Cal. 2007).......................16

*In re Sipex Corp. Sec. Litig.,*
    No. 05-392 (WHA) (N.D. Cal. 2006)................................15

*In re Sunterra Corp. Sec. Litig.,*
    No. 2:06-cv-00844-BES-RJJ (D. Nev. 2009)......................16

*In re Watchguard Sec. Litig.,*
    No. 2:05- cv-00678-JLR, slip op. (W.D. Wash. 2007)....................16

*In re Westell Techs., Inc. Sec. Litig.,*
    No. 1:00-CV-06735 (N.D. Ill. 2003) ...............................16

*In re Wireless Facilities, Inc. Sec. Litig.,*
    No. 04cv1589 NLS (S.D. Cal. 2009)...............................................................16

**STATUTES**

15 U.S.C. § 78u-4....................................................................................................6

**OTHER AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards*
    (2d ed. 1993) ......................................................................................................5

Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlement,*
*2008 Review and Analysis*
    (Cornerstone Research 2008) ..........................................................................10

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:*
*The Implications of Economic Theory for*
*Private Enforcement of Law Through Class and*
*Derivative Actions,*
    86 Colum. L. Rev. 669 (1986) ..........................................................................6

Report of the Third Circuit Task Force,
*Court Awarded Attorney Fees,*
    108 F.R.D. 237 (1985) ......................................................................................5

Richard Posner,
*Economic Analysis of Law*
    (3d ed. 1986) ....................................................................................................13

Stephanie Plancich, Ph.D, Svetlana Starykh,
*2008 Trends in Securities Class Actions*
    (NERA Dec. 2008) ..........................................................................................10

1   TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2        PLEASE TAKE NOTICE, that, pursuant to the Order of the Court dated March

3   25, 2009 (the "Preliminary Approval Order"), on September 14, 2009, at 9:30 a.m., or

4   as soon thereafter as counsel may be heard, before the Honorable Gary A. Feess,

5   United States District Judge, Lead Plaintiff will and hereby does move for an order for

6   an award of attorneys' fees and expenses.   This motion is based upon the

7   accompanying Memorandum of Points and Authorities in Support of Lead Counsel's

8   Petition for an Award of Attorneys' Fees and Reimbursement of Expenses, the

9   Memorandum of Points and Authorities in Support of Final Approval of Class Action

10  Settlement ("Settlement Memorandum"), the Declaration of Jeffrey M. Haber in

11  Support of Final Approval of Settlement, Award of Attorneys' Fees and

12  Reimbursement of Expenses (the "Haber Decl."), the Declaration of Joseph R.

13  Seidman, Jr. in Support of Final Approval of Settlement, Award of Attorneys' Fees

14  and Reimbursement of Expenses (the "Seidman Decl."), the Amended Stipulation of

15  Settlement dated March 13, 2009 (the "Stipulation"), all other pleadings and matters

16  of record, and such additional evidence or argument as may be presented at the

17  hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

18

19  **I.    PRELIMINARY STATEMENT**

20       Counsel for the plaintiff class[1] ("Counsel" or "Plaintiff's Counsel") respectfully

21  submit this memorandum in support of their application for an award of attorneys'

22

23  [1] The "Class," or "Settlement Class," which this Court preliminary certified on March 25, 2009, consists of all
    persons who purchased LJ common stock during the period February 15, 2007 through September 6, 2007,
24  inclusive (the "Class Period"), and who were damaged thereby.  Excluded from the Settlement Class are
    Defendants, members of the immediate family of the Individual Defendants (Yu Chuan Yih, and Hon Tak
25  Ringo Ng – both of whom were not served), any entity in which any Defendant has or had a controlling
    interest, current and former directors and officers of LJ and the legal representatives, heirs, successors, or
26  assigns of any such excluded Person or entity.  Also excluded from the Settlement Class are those Persons
    who timely and validly requested exclusion from the Settlement Class pursuant to the Notice of Pendency and
27  Settlement of Class Action and Settlement Hearing Thereon. *See* Affidavit of Jose C. Fraga, sworn to
    September 3, 2009 (the "Fraga Affidavit" or "Fraga Aff."), Ex. C., attached as Exhibit 1 to the Haber
28  Declaration.

25198v1

1  fees and reimbursement of expenses incurred in successfully prosecuting this class

2  action litigation (the "Litigation").   This application is also supported by the

3  Settlement Memorandum, the Haber and Seidman Declarations, and all supporting

4  exhibits thereto.[2]

5      After a vigorous and hotly contested litigation, the Parties have presented an

6  agreement to settle the Litigation (the "Settlement") for $2,000,000 in cash, plus

7  interest (the "Settlement Fund").[3]   On March 25, 2009, the Court preliminarily

8  approved the Settlement and directed that notice of the Settlement be sent to potential

9  Class Members.

10     More than 22,630 copies of the Notice of Pendency and Settlement of Class

11 Action and Settlement Hearing Thereon (the "Notice") were mailed to the members of

12 the Class.  Fraga Aff. ¶ 10.  The Notice described the Settlement and notified Class

13 members of Counsel's intention to seek an award of attorneys' fees not to exceed 25%

14 of the Settlement Fund and for reimbursement of out-of-pocket expenses. Fraga Aff.,

15 Ex. C at 1, 6.  Although the Notice advised members of the Class that they could

16 object to the Settlement or the request for attorneys' fees and reimbursement of

17 expenses (id. at 7), only one Class member has objected to the Settlement and none to

18 the fee and expense request.   Haber Decl. ¶¶ 92, 99.   This fact is particularly

19 significant here, since the Class includes institutional investors with substantial stakes

20 in the Settlement Fund sufficient to motivate them to object to the fee application if

21 they thought it was appropriate to do so.   Thus, the reaction of the Class has been

22 overwhelmingly positive and strongly endorses the Settlement and Lead Counsel's fee

23 request.

24

25  [2] The Haber Declaration fully describes the history of the Litigation, the claims asserted, the efforts of
    Counsel, and the negotiations leading to the Settlement set forth in the Stipulation. The Settlement
26  Memorandum discusses the complexity, risks and costs associated with this Litigation and many of the legal
    obstacles to Lead Plaintiff's success on the merits.
27

28  [3] All defined terms contained in this memorandum shall have the same meanings as set forth in the
    Stipulation.

1    Utilizing the guidelines endorsed by the Ninth Circuit, the requested fee is
2    reasonable and eminently fair.   Even using the lodestar/multiplier approach as a
3    guideline, the requested fee is reasonable.  The fee requested by Counsel − 25% of the
4    Settlement Fund or $500,000 − represents a negative multiplier of .7 (Counsel's
5    lodestar of $722,688.00 multiplied by .7).  Haber Decl. ¶¶ 10, 90.

6    Likewise, the Court should reimburse Counsel for their out-of-pocket expenses.
7    Counsel's expenses, which include, among others, fees for the accounting and
8    damages consultants, legal research, travel, and filing fees, were necessary to the
9    prosecution of this action.  Haber Decl. ¶ 99, and Exs. 5 and 7, attached thereto.  Thus,
10   under applicable Ninth Circuit authority, these expenses should be reimbursed.

11   For the reasons set forth here and in the Haber Declaration, and in the
12   Declarations of Plaintiff's Counsel in support of the fee and expense petition,
13   Plaintiff's Counsel respectfully submit that the requested attorneys' fees and expenses
14   are fair and reasonable under the applicable legal standards and in light of the
15   contingency risk undertaken and the result achieved, and should be awarded by the
16   Court.

17   **II.    HISTORY OF THE LITIGATION**

18   The Court is respectfully referred to the Haber Declaration for a description of
19   the procedural history of the Litigation, the claims asserted, the investigation and the
20   confirmatory discovery undertaken, the negotiation of the Settlement, and the
21   substantial risks and uncertainties of the Litigation.

22   **III.   THE PERCENTAGE REQUESTED IS REASONABLE**

23   **A.     The Legal Standards Governing the Award of Attorneys' Fees**

24   **1.     Reasonable Percentage of the Fund Recovered is the
25            Appropriate Method for Awarding Attorneys' Fees in
26            Common Fund Cases**

27   For their efforts in creating a common fund for the benefit of the Class,
28   Plaintiff's Counsel seek a reasonable percentage of the fund recovered as attorneys'

1    fees. The percentage method of awarding fees has become an accepted, if not the

2    prevailing method, for awarding fees in common fund cases in this Circuit and

3    throughout the United States.

4         It has long been recognized in equity that "a private plaintiff, or his attorney,

5    whose efforts create, discover, increase or preserve a fund to which others also have a

6    claim is entitled to recover from the fund the costs of his litigation, including

7    attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

8    In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that

9    under the "common fund doctrine" a reasonable fee may be based "on a percentage of

10   the fund bestowed on the class." The purpose of this doctrine is to avoid unjust

11   enrichment so that "those who benefit from the creation of the fund should share the

12   wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub.*

13   *Power Supply Sys. Sec. Litig.* (*WPPSS*), 19 F.3d 1291, 1300 (9th Cir. 1994). This

14   rule, known as the common fund doctrine, is firmly rooted in American case law. *See,*

15   *e.g., Trustees v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. v. Pettus*,

16   113 U.S. 116 (1885); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4]

17        Since *Hughes Air West*, the Ninth Circuit has expressly approved of the use of

18   the percentage method in common fund cases. *Paul, Johnson*, 886 F.2d 268; *Six (6)*

19   *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v.*

20   *Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); and *Vizcaino v. Microsoft Corp.*

21

22

23   ───────────────

     [4] In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the
24   principle underlying fee awards in common fund cases:

25              Since the Supreme Court's 1885 decision in [*Central Railroad*, 113 U.S.
                116], it is well settled that the lawyer who creates a common fund is allowed
26              an *extra* reward, beyond that which he has arranged with his client, so that he
                might share the wealth of those upon whom he has conferred a benefit. The
27              amount of such a reward is that which is deemed "reasonable" under the
                circumstances.
28
     *Id*. at 271 (citation omitted).

1   *(Vizcaino I)*, 290 F.3d 1043 (9th Cir. 2002).[5]  Although the Ninth Circuit has approved

2   of the percentage method, the district court has the discretion to award fees in

3   common fund cases based on either the so-called lodestar/multiplier method or the

4   percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296; *Powers v. Eichen*, 229 F.3d

5   1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in*

6   *Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)).

7       Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost

8   uniformly shifted to the percentage method in awarding fees in representative actions.

9   There are compelling reasons why so many courts have opted for the percentage

10  approach in common fund cases:  (1) the percentage method compensates lawyers

11  based upon the benefit conferred by the attorneys on the class, rather than on the time

12  expended on a case (*see* 1 Alba Conte, *Attorney Fee Awards* § 2.07, at 47 (2d ed.

13  1993)); (2) a percentage fee uses private incentives rather than careful monitoring to

14  align the interests of lawyer and clients, creating an incentive for attorneys to obtain

15  the maximum recovery in the shortest possible time and by the most efficient means;[6]

16  (3) the percentage method mirrors the private marketplace in which contingent fee

17  attorneys and their clients routinely negotiate 25% to 40% percentage fees (*see In re*

18

19

---

20  [5] Supporting authority for the percentage method in other circuits is overwhelming. Two circuits have ruled
    that the percentage method is mandatory in common fund cases. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d

21  1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  Other
    circuits and commentators have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43

22  F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing *Blum*,
    465 U.S. at 900 n.16 (recognizing both implicitly and explicitly that a percentage recovery is reasonable in

23  common fund cases)); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v.*
    *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the Third Circuit Task Force, *Court Awarded*

24  *Attorney Fees*, 108 F.R.D. 237, 254 (1985).

25  [6] In *Kirchoff v. Flynn*, the court stated that "[t]he contingent fee uses private incentives rather than careful
    monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . .

26  The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a
    payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion

27  between the recovery and the fees assessed to defendants . . . .  At the same time as it automatically aligns
    interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee

28  automatically handles compensation for the uncertainty of litigation." 786 F.2d 320, 325-26 (7th Cir. 1986).

1    *Activision Securities Litigation*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989);[7] and (4)

2    the percentage of the fund method precludes the manipulation of factors affecting fee

3    awards by, for example, cutting short attempts to prolong litigation to enhance the fee

4    (a recognized flaw of the lodestar method).   As demonstrated below, the 25% fee

5    request is entirely reasonable under the circumstances of this action.[8]

6

7
        **B.   The Fee Request is Reasonable**
              **Under the Percentage of Recovery Method**

8        In *Paul, Johnson,* the Ninth Circuit established 25% of the fund as the

9    "benchmark" award for attorneys' fees. 886 F.2d at 272-73; *see also Torrisi*, 8 F.3d at

10    1376 (reaffirming 25% benchmark); *Powers*, 229 F.3d at 1256 (same).

11        The guiding principle in this Circuit is that a fee award be "'reasonable under

12    the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation omitted).   In view of the result

13    obtained, the contingent fee risk and the financial commitment of Lead Counsel, an

14    award of 25% of the recovery obtained for the Class is appropriate.

15

16
        **C.   The Reasonableness of the Fee Requested**
              **Is Confirmed by a Lodestar Analysis**

17        The Court may also use a lodestar computation "as a cross-check on the

18    percentage method." *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash.

19

20

21
[7] Professor John C. Coffee, Jr. argues that a percentage of the recovery is the only reasonable method of
awarding fees in common fund cases:

22

23

24
> If one wishes to economize on the judicial time that is today invested in monitoring class and
> derivative litigation, the highest priority should be given to those reforms that restrict collusion and are
> essentially self-policing. The percentage of the recovery fee award formula is such a "deregulatory"
> reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory"
> approach is the only alternative . . . .

25

26
John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private
Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (1986).

27

28
[8] This is particularly appropriate in Private Securities Litigation Reform Act ("PSLRA") cases where
Congress recognized the propriety of the percentage method of fee awards. 15 U.S.C. § 78u-4(a)(6) ("Total
attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a
reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

1994); *Powers*, 229 F.3d at 1256 (quoting *Coordinated Pretrial*, 109 F.3d at 607). Here, such a "cross-check" confirms the reasonableness of the 25% fee requested.

In computing the lodestar, the hourly billing rate to be applied is the "market rate," i.e., the hourly rate that is normally charged in the community where counsel practices. *See, e.g., Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.") (holding that the district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate.").[9]  Lead Counsel's rates are the competitive hourly rates in their respective legal communities for litigating cases of this sort – complex class action securities cases.  Such rates necessarily reflect the reputation, experience, care, and successful records of petitioning counsel and their firms.

In addition, the Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) (use of current rates proper where, as here, services were provided within 2 to 3 years

---

[9] *See also Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The Supreme Court in [*Blum*, 465 U.S. at 895] . . . held that 'reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant community,' i.e., where counsel maintain their office . . . ."); *Spencer v. Comserv Corp.*, No. Civ 4-84-794, 1986 WL 15155, at *10 (D. Minn. Dec. 30, 1986) ("Compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate.").

1    of fee application); *Skelton v. GMC*, 860 F.2d 250, 255 n.5 (7th Cir. 1988) ("The
2    courts in this circuit generally use current rates.").

3       The hourly rates charged by Plaintiff's Counsel have repeatedly been approved
4    in judicial settlement hearings, and are consistent with rates approved in this Circuit
5    and others in many recent securities class action cases.

6       Counsel's affidavit and declaration, attached as Exhibits 5 and 7 to the Haber
7    Declaration, respectively, show that counsel's fee for work performed in this case, if
8    charged at current hourly rates would come to a lodestar of $722,688.50.   The fee
9    produced  by  the  percentage  method  is  equivalent  to  a  negative  multiplier  of
10   approximately .7. Such a multiplier is below that typically awarded in similar cases.

11       In  determining  attorneys'  fees  in  a  common  fund  case,  courts  use  a  risk
12   multiplier to compensate plaintiffs' attorneys for the risk that they will not be paid if
13   the litigation is unsuccessful.  The risk multiplier is an effort to mimic market forces.
14   *See Cont'l Ill.*, 962 F.2d at 569.

15       Multipliers  between  2.5  and  4  have  been  awarded  in  the  vast  majority  of
16   complex common fund cases so long as the resulting fee is not more than 20% to 30%
17   of the recovery.  *See, e.g., Vizcaino I*, 290 F.3d at 1051 (applying 3.65 multiplier for
18   fee of $27,127,800); *In re Prudential Ins. Co. of Am.*, 148 F.3d 283, 341 (3d Cir.
19   1998) ("Multiples ranging from one to four are frequently awarded in common fund
20   cases when the lodestar method is applied.").[10]

21       A multiplier of .7 is well below the norm and is plainly "reasonable" in view of
22   the significant risks faced by Counsel when it accepted this case and the good result
23   achieved.

24

25   [10] *See, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (3.6 multiplier); *In re Aetna,*
26   *Inc.*, No. CIV.A.MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier for fee of $24 million);
     *Local 56, United Food & Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000 (D.N.J.
27   1997) (2.89 multiplier); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (2.5
     multiplier for fee of $32 million); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (2.5
28   multiplier); *In re Computron Software Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998) (2.5 multiplier); *Kurzweil v.*
     *Phillip Morris Co.*, No. 94-2373, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) (2.46 multiplier).

**D.    Consideration of Relevant Factors Used by the Courts in the Ninth Circuit Justify an Award of a 25% Fee in This Case**

Consideration of the factors discussed below confirms that the requested fee is appropriate here.

**1.    The Result Achieved**

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See, e.g., Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019 (3d Cir. 1977) ("the 'quality' factor requires the court to adjust a fee on the basis of results of the work performed"); *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The benefits conferred upon the Class by Counsel's efforts are discussed in detail in the Settlement Memorandum and the Haber Declaration.  The Settlement consists of $2 million in cash, plus interest, to be distributed to Class members.  As demonstrated in the Haber Declaration, Plaintiff's damages consultant, Michael Marek of Financial Markets Analysis, opined that Class-wide damages, under the Plan of Allocation, assuming complete victory on all liability and damages issues, was estimated to be approximately $44 million.  The Settlement provides Class members with approximately 4.5% of Plaintiff's best possible result, assuming not only complete victory (including proof of loss causation), but unlimited resources for payment of a judgment. *See* Haber Decl. ¶ 6.  Given defendants' advocacy for dismissal of the Litigation, actual provable damages could have been a small fraction of this amount had the case moved forward through expert discovery, summary judgment and trial.  Lead Counsel's pursuit of Plaintiff's claims has resulted in a substantial and certain recovery for the Settlement Class.

1    The notable nature of the Settlement is supported by a review of recoveries in

2  other complex class action settlements.    Indeed, the benefit conferred by the

3  Settlement – $2 million in cash, plus interest – exceeds the median securities class

4  action settlement. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006)

5  (district court did not abuse discretion in finding settlement was an "excellent" result

6  in light of the risk of establishing liability and damages despite the fact that settlement

7  possibly represented only 4% of the total damages claimed).    *See also* Stephanie

8  Plancich, Ph.D, Svetlana Starykh, *2008 Trends in Securities Class Actions*, at 14

9  (NERA Dec. 2008) (finding that in 2008, the median ratio of settlement value to

10  investor losses was 2.7%) (attached as Exhibit 2 to the Haber Decl.); Ellen M. Ryan &

11  Laura E. Simmons, *Securities Class Action Settlement, 2008 Review and Analysis*, at 6

12  (Cornerstone Research 2008) (finding that the median settlement as a percentage of

13  estimated damages was 3.2% in 2008, compared to 2.8% for the period 2002 through

14  2007) (attached as Exhibit 3 to the Haber Decl.).

15    In light of the legal and factual complexity of this case, the significant

16  difficulties of establishing both liability and damages, and the uncertainties

17  surrounding the available sources of recovery, the Settlement is a very good result.

18                **2.    The Risks of the Litigation**

19    Numerous cases have recognized that risk is an important factor in determining

20  a fair fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders, Inc.*

21  *of Phila. v. Am. Radiator & Standard (Lindy Bros. II)*, 540 F.2d 102, 117 (3d. Cir.

22  1976).    Uncertainty that an ultimate recovery would be obtained is highly relevant in

23  determining risk. *WPPSS*, 19 F.3d at 1300; *Lindy Bros. II*, 540 F.2d at 117. As the

24  court aptly observed in *In re King Resources Co. Securities Litigation*:

25                The litigation also involved unique and substantial issues of
26                law in the technical area of SEC Rule 10b-5, . . . difficult,
                 complex and oft-disputed class action questions, and
27                difficult questions regarding computation of damages.

28                                    * * * *

> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation. The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. 610, 632, 636-37 (D. Colo. 1976). *See also In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

As discussed in the Haber Declaration, substantial risks and uncertainties in this type of litigation, and in this Litigation in particular, made it far from certain that any recovery would ultimately be obtained. Moreover, while most courts have always recognized that these types of cases carry significant risk, post-PSLRA rulings in this Circuit regarding, *inter alia*, motions to dismiss, make it clear that the risk of no recovery (and hence no fee) has increased exponentially.[11] The risks assumed here by Plaintiff's Counsel were substantial, particularly with respect to pleading and proving falsity, scienter, loss causation, and damages. There is no question that if not settled, this case would have presented a number of sharply contested, difficult issues of law and fact.

As was evident in the pending motion to dismiss, scienter was a hotly contested issue. Defendants asserted that Lead Plaintiff could not meet the stricter pleading standard set by the PSLRA and the Ninth Circuit's decision on pleading scienter in *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999). Success in defeating the motion on this issue was not assured.

---

[11] *See, e.g., In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) (affirming dismissal of complaint); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) (same); *Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) (same).

1  Even if the CAC were sustained on the pending motion to dismiss, there could
2  be no assurance that the claims would survive Defendants' inevitable motion for
3  summary judgment, trial and post-trial motions.

4  Thus, the complexity and riskiness of this action support the fee requested.

### 3. The Skill Required and the Quality and Efficiency of the Work

6  The successful prosecution of these complex claims required the work of highly
7  skilled and specialized attorneys. *Heritage Bond*, 2005 WL 1594389, at *12 ("The
8  experience of counsel is also a factor in determining the appropriate fee award."). The
9  quality of Counsel's work on this case was excellent and is ultimately reflected in the
10 result.

11 As shown in Counsel's fee affidavit and declaration (annexed to the Haber
12 Declaration as Exhibits 5 and 7, respectively), Plaintiff's Counsel have substantial
13 experience, and have a national reputation for, litigating complex class action
14 litigation, such as this action.

15 The quality and vigor of opposing counsel is also important in evaluating the
16 services rendered by Lead Counsel. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec.*
17 *Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Warner Commc'ns Sec. Litig.*,
18 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Defendants
19 were represented by Morrison & Foerster, LLP, a prominent law firm with a
20 nationwide reputation for vigorous advocacy of its clients' interests. Thus, the fact
21 that Counsel achieved the Settlement for the Class in the face of formidable legal
22 opposition further evidences the quality of their work.

### 4. The Novelty and Difficulty of the Questions Presented

24 Courts have recognized that the novelty and difficulty of the issues in a case are
25 significant factors to be considered in making a fee award. *See, e.g.*, *Vizcaino v.*
26 *Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga.*
27 *Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

28

1    Courts have properly recognized that "securities actions have become more
2 difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D.
3 at 194.   This Litigation is no different.   As mentioned above, scienter was highly
4 contested.  Plaintiffs in the Ninth Circuit must show that Defendants acted with actual
5 knowledge or deliberate disregard for the truth. *Silicon Graphics*, 183 F.3d at 979.
6 Thus, to establish Defendants' scienter, Lead Plaintiff would have to show that
7 Defendants withheld or misrepresented information concerning LJ International's
8 financial condition either with actual intent to deceive, manipulate or defraud, or that
9 Defendants deliberately disregarded these facts and their consequences. *Id*. at 974.
10 This is notoriously difficult – particularly with the PSLRA's discovery stay in place
11 before the motion to dismiss has been decided.

12    Given the inherent complexities of a securities class action and the added
13 difficulties faced now in bringing cases under the PSLRA, the fee requested is fair and
14 reasonable.

15        **5.        The Contingent Nature of the Case and**
16               **The Financial Burden Carried by the Plaintiff**

17    A determination of a fair and reasonable fee must include consideration of the
18 contingent nature of the fee and the difficulties that were overcome in obtaining the
19 settlement. *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994
20 WL 202394, at *6 (E.D. La. May 18, 1994) (in awarding counsel's attorneys' fees,
21 noting that "Counsel's contingent fee risk is an important factor in determining the fee
22 award").   It is an established practice in the private legal market to reward attorneys
23 for taking the risk of non-payment by paying them a premium over their normal
24 hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis*
25 *of Law* § 21.9, at 534-35 (3d ed. 1986).   Contingent fees that may far exceed the
26 market value of the services if rendered on a non-contingent basis are accepted in the
27 legal profession as a legitimate way of assuring competent representation for plaintiffs

28

1  who could not afford to pay on an hourly basis regardless whether they win or lose.

2  *WPPSS*, 19 F.3d at 1299.

3       It is important to note that there are numerous class actions in which plaintiffs'

4  counsel took the risk, expended thousands of hours, and yet received no remuneration

5  whatsoever despite their diligence and expertise.  Subsequent to the passage of the

6  PSLRA, a high percentage of cases in this Circuit have been dismissed at the pleading

7  stage in response to defendants' arguments that the complaints do not meet the

8  PSLRA's pleading standards.

9       Plaintiff's Counsel have received no compensation during the pendency of the

10  Litigation and have incurred significant expenses in litigating for the benefit of the

11  Class.  Any fee award or expense reimbursement to Plaintiff's Counsel has always

12  been at risk and completely contingent on the result achieved and on this Court's

13  exercise of its discretion in making any award.

14           **6.    The Customary Fee**

15       Courts often look at fees awarded in comparable cases to determine if the fee

16  requested is reasonable.  *Vizcaino I*, 290 F.3d at 1050 n.4.  If this were a non-

17  representative litigation, the customary fee arrangement would be contingent on a

18  percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465 U.S. at

19  903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the

20  plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the

21  recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090E (M), 1990 WL

22  454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee

23  contracts have traditionally ranged between 30% and 40% of the total recovery.");

24  *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 WL 21981, at *15

25  (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage

26  lawsuits use the simple method of paying the attorney a percentage of what is

27  recovered for the client . . . .  The percentages agreed on vary, with one-third being

28  particularly common."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case

went to trial); *Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1051 (2d Cir. 1973) (32% fee recovery for settlement before trial); *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 48 n.5 (3d Cir. 1987) (contingent fee consisting of one-third of the settlement fund deemed reasonable). Thus, the customary contingent fee in the private marketplace is 30% to 40% of the fund recovered – a fee that is higher than that which is being requested in this case.

Counsel's efforts were performed, and the result achieved, on a wholly contingent basis in the face of determined opposition.  Under these circumstances, Plaintiff's Counsel are entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained.  Under all of the circumstances present here, a 25% fee is fair and reasonable.  This is particularly true where, as here, Lead Counsel request a negative multiplier, and Lead Counsel's 25% fee was negotiated with a sophisticated institutional investor, District No. 9.

### 7.   A 25% Fee Has Been Awarded in Settlements of Similar Amounts in this Circuit and Elsewhere

The fee requested here is supported by fee awards at or above the Ninth Circuit benchmark in other class action cases:

- *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement);

- *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) (upholding award of one-third of $7.25 million settlement fund in securities class action);

- *In re Sipex Corp. Sec. Litig.*, No. 05-392 (WHA) (N.D. Cal. 2006) (awarding 25% of $6 million settlement);

- *In re Impax Labs., Inc. Sec. Litig.*, No. C-04-4802-JW (N.D. Cal. 2009) (awarding 25% of $2.25 million settlement);

- *In re Party City Corp. Sec. Litig.*, No. 2:99-CV-01353 (D.N.J. 2003) (awarding 33 ⅓% of $3.8 million settlement);

- *In re SeraCare Life Sci., Inc. Sec. Litig.*, No. 05-CV-2335-H(CAB) (S.D. Cal. 2007) (awarding 25% of $1.6 million settlement);

- *In re Watchguard Sec. Litig.*, No. 2:05-cv-00678-JLR, slip op. (W.D. Wash. 2007) (awarding 25% of $1.75 million settlement);

- *In re Westell Techs., Inc. Sec. Litig.*, No. 1:00-CV-06735 (N.D. Ill. 2003) (awarding 33⅓% of $3.35 million settlement);

- *Bellocco v. Curd (Uniroyal Tech. Corp.)*, No. 8:02-CV-1141 (M.D. Fla. 2006) (awarding 30% of $2.65 million settlement);

- *In re MCSi, Inc. Sec. Litig.*, No. 3:03-cv-015 (WHR) (S.D. Ohio 2008) (awarding 33 ⅓% of $2.25 million settlement);

- *Heritage Bond*, 2005 WL 1594389, at *1 (awarding one-third of $27.75 million settlement);

- *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844-BES-RJJ (D. Nev. 2009) (awarding 25% of $8 million settlement);

- *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS (S.D. Cal. 2009) (awarding 25% of $12 million settlement)[12]

## E.     The Reaction of the Class Supports the Requested Award

As set forth in the Fraga Affidavit, over 22,630 Notices were mailed to Class members and a summary notice was published on April 9, 2009 in the national edition of *Investors Business Daily.* ¶¶ 6, 10. Class members were informed in the Notice that Counsel would apply for attorneys' fees of up to 25% of the Settlement Fund, plus expenses not to exceed $100,000, and were advised of their right to object to Counsel's fee and expense request. Fraga Aff., Ex C. at 7. As of September 4, 2009, Counsel has received no objections to the fee and expense request, and the time to object has now expired. Haber Decl. ¶¶ 92, 99. This is particularly significant because the Class includes sophisticated claimants such as institutional investors with both large claims against the Settlement and counsel readily available to advise, represent and assist them in expressing any opposition to the settlement terms and fee request made here if they so chose. Haber Decl. ¶ 78. These entities have every

---

[12] All of the cases in this list that are unreported are attached in the accompanying Appendix of Unreported Decisions.

1  incentive to object if they believe the fees and expenses are unreasonable. Thus, the
2  reaction of the Class fully supports the requested fee award.

3  **IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
4  **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

5  Counsel also requests that the Court grant its application for reimbursement of
6  $49,752.10 in litigation costs (including approximately $15,000 in expert and
7  consultants fees) incurred by them in connection with the prosecution of the
8  Litigation. *See Behrens*, 118 F.R.D. at 549; *Meyer v. Citizens & S. Nat'l Bank*, 117
9  F.R.D. 180, 183 (M.D. Ga. 1987); *Edmonds v. United States*, 658 F. Supp. 1126,
10 1142-43 (D.S.C. 1987); *Wheeler v. Durham City Bd of Educ.*, 88 F.R.D. 27, 34
11 (M.D.N.C. 1980).   This amount is less than the $100,000 amount included in the
12 Notice.

13 These expenses include, *inter alia*, travel, photocopying, telephone, fax,
14 computer research fees, as well as the fees of Plaintiff's damages and accounting
15 consultants.  Haber Decl. ¶ 99 and Exs. 5 and 7, attached thereto.  Counsel submits
16 that these expenses were reasonably and necessarily incurred to achieve the result
17 obtained for the Class here.

18 The appropriate analysis to apply in deciding which expenses are compensable
19 in a common fund case of this type is whether the particular costs are of the type
20 typically billed by attorneys to paying clients in the marketplace.   *Harris v.*
21 *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award
22 of attorney's fees those out-of-pocket expenses that 'would normally be charged to a
23 fee paying client.'") (citation omitted).  *See also Bratcher v. Bray-Doyle Indep. Sch.*
24 *Dist., No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they
25 would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d
26 Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland*
27 *Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may
28 be compensated for reasonable out-of-pocket expenses incurred and customarily

1    charged to their clients, as long as they 'were incidental and necessary to the

2    representation' of those clients.") (citation omitted).  The categories of expenses for

3    which Counsel seek reimbursement here are the type of expenses routinely charged to

4    hourly clients and, therefore, should be reimbursed out of the Settlement Fund.

5          In addition, as noted, the Notice provided to the members of the Class informed

6    them that Counsel would seek reimbursement of their expenses incurred in the

7    prosecution of the Litigation.  To date, no member of the Class has raised an objection

8    to the request.  Haber Decl. ¶¶ 77, 99.

9    **V.    CONCLUSION**

10         Securities class actions are notoriously risky.  There are numerous examples

11   where counsel, in cases such as this, after the expenditure of thousands of hours, have

12   received no compensation whatsoever.  Onlookers often focus on the overall size of

13   the fees awarded, but fail to take into consideration the instances where huge

14   investments in cases are lost.  Here, from the beginning, Lead Plaintiff has been faced

15   with determined adversaries represented by experienced and determined counsel.

16   Without any assurance of success, Lead Plaintiff and its Counsel pursued this

17   Litigation to a very good conclusion.  The Settlement represents a good recovery on

18   behalf of the Class and stands as a testament to the skill and dedication of Counsel.

19   We accordingly submit that the Court should approve the fee and expense application

20   and enter the order submitted herewith awarding Counsel 25% of the Settlement Fund

21   plus reimbursement of $49,752.10 in expenses, plus the interest earned thereon at the

22   same rate and for the same period as that earned on the cash portion of the Settlement

23   Fund until paid.

24

25

26

27

28

1  Dated this 4th day of September, 2009

2

3                          Respectfully submitted,

4                          **GLANCY BINKOW & GOLDBERG, LLP**

5                          /s/

6                          _____

7                          Lionel Z. Glancy (#134180)
                           Michael Goldberg (#188669)
8                          1801 Avenue of the Stars, Suite 311
                           Los Angeles, Ca 90067
9                          Tel: (310) 201-9150
10                         Fax: (310) 201-9160

11                         **BERNSTEIN LIEBHARD LLP**
12                         Jeffrey M. Haber
                           Joseph R. Seidman, Jr.
13                         10 East 40th Street
14                         New York, NY 10016
                           Tel: (212) 779-1414
15

16                         **Lead Counsel for Lead Plaintiff and the Class**

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 08-02**

3

I, the undersigned, say:

4

5

6

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On September 4, 2009, I caused to be served the following document:

7

8

9

10

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

11

12

13

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF LEAD COUNSEL'S AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF**

14

15

16

**DECLARATION OF JEFFREY M. HABER IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

17

18

**DECLARATION OF JOSEPH R. SEIDMAN, JR. IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

19

20

**APPENDIX OF UNREPORTED DECISIONS IN SUPPORT OF LEAD PLAINTIFF'S PETITION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

21

22

23

24

By posting this document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the following parties:

Vahn Alexander
valexander@faruqilaw.com

25

26

27

Saro H Balian
sbalian@mofo.com

28

Peter A Binkow
pbinkow@glancylaw.com

1   Mary K Blasy
    maryb@csgrr.com
2

3   Patrick J Coughlin
    patc@csgrr.com,lisamp@csgrr.com,e_file_sd@csgrr.com

4   Lionel Z Glancy
    lglancy@glancylaw.com
5

6   Michael M Goldberg
    mmgoldberg@glancylaw.com,info@glancylaw.com
7

8   Jeffrey M Haber
    haber@bernlieb.com

9   Khara Kessler
    kessler@bernlieb.com
10

11  Dan E Marmalefsky
    dmarmalefsky@mofo.com,skay@mofo.com
12

13  Darren J Robbins
    e_file_sd@csgrr.com

14  Laurence M Rosen
    lrosen@rosenlegal.com
15

16  Joseph R Seidman, Jr
    seidman@bernlieb.com

17  Dana Statsky Smith
    dsmith@bernlieb.com
18

19  Evan Jason Smith
    esmith@brodsky-smith.com

20  David C Walton
    davew@csgrr.com
21

22  Timothy J. MacFall
    macfall@bernlieb.com
23

    and also via First Class Mail upon the parties not registered as follows:
24

25  Ramzi Abadou
    Coughlin stoia Geller Rudman and Robbins
26  655 West Broadway, Suite 1900
    San Diego, CA 92101-4297

27  Elizabeth Shattuck Finberg
    Cohen Milstein Hausfeld and Toll
28  1100 New York Avenue N W
    Washington, DC 20005

PROOF OF SERVICE

1

Anna G. Brandt                                    Objector: Via Mail and E-Mail
789 Meadowbrook Lane

2

Chambersburg, PA 17201
annagbrandt@yahoo.com

3

4

      I certify under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.  Executed on September 4, 2009, at Los

5

Angeles, California.

6

*s/ Peter A. Binkow*
Peter A. Binkow

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE